JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| IN RE: ALLANA BARONI | CASE NO. CV 19-7548 MWF<br><br>ORDER RE: APPEAL FROM THE UNITED STATES BANKRUPTCY COURT'S CONVERSION ORDER |

Before the Court is an appeal from the United States Bankruptcy Court (the Honorable Marin R. Barash, United States Bankruptcy Judge). Appellant Alanna Baroni appeals the Bankruptcy Court's Order converting her chapter 11 case to chapter 7 (the "Conversion Order"). The Conversion Order was issued on April 29, 2019. (*See* Docket No. 1).

Alanna Baroni submitted her Opening Brief ("OB") on December 20, 2019. (Docket No. 15). On February 20, 2020, Appellee The Bank of New York Mellon ("BoNYM") submitted its Brief ("AB"). (Docket No. 23). Appellees Nationstar Mortgage LLC ("Nationstar") and Wells Fargo Bank, N.A. ("Wells Fargo") joined in BoNYM's Brief, adopting its arguments in full. (Docket No. 24). On March 5, 2020, Appellant submitted her Reply Brief ("RB"). (Docket No. 28).

The Court has read and considered the papers filed in this appeal, and held a telephonic hearing on January 19, 2021, pursuant to General Order 20-09 arising from the COVID-19 pandemic.

The Order is **AFFIRMED**. The Bankruptcy Court did not abuse its discretion in converting the case from chapter 11 to chapter 7.

## I.   BACKGROUND

### A.   The Bankruptcy Case

Appellant filed a chapter 13 bankruptcy petition on February 1, 2012, which was converted to chapter 11 on February 29, 2012. (OB at 8). BoNYM filed a proof of claim in September 2012, alleging that it held a secured claim of $1,401,460.91 on a promissory note secured by a deed of trust against Baroni and her co-borrower/non-debtor husband James Baroni's real property at 5390 Plata Rosa Court in Camarillo, California. (*See, e.g.*, Appellant's Excerpts of Record ("ER") 40-41, 86, 101, 128 (Docket No. 16)).

Appellant's Second Amended Chapter 11 Plan of Reorganization (the "Plan") was confirmed by the Bankruptcy Court on April 15, 2013. (ER 11-54). The Plan bifurcated BoNYM's claim into a $1,145,000 secured portion and a $256,460.90 unsecured portion, and required Appellant to make monthly payments toward the claim. (ER 40-41). Appellant contested the basis of BoNYM's claim and several other claims, including a claim by Wells Fargo. (ER 29). With respect to all contested claims, including BoNYM's claim, the Plan directed Appellant to make the specified monthly payments into separate reserve accounts (one reserve account per contested claim) until there was a final resolution of Appellant's objections to the claim, at which point, Appellant had ten days to disburse the reserve account's funds to the "allowed claim holder." (ER 29, 40-41). The Bankruptcy Court later clarified that a claim became "allowed," and therefore triggered Appellant's duty to disburse the reserve account's funds, upon entry of "a final, non-appealable order" affirming the creditor's right to pursue the claim. (ER 382-86).

On April 3, 2013, Appellant filed an adversary proceeding against BoNYM, disputing BoNYM's right to enforce the loan documents underlying BoNYM's claim. (ER 102). On January 20, 2016, the bankruptcy court entered summary judgment for BoNYM and against Appellant on all causes of action. (ER 117-18). Appellant appealed, and on October 3, 2016, the district court affirmed the judgment. (ER 66). Appellant appealed to the Ninth Circuit, which also affirmed. (ER 66, 141-46). On October 9, 2018, the Supreme Court denied Appellant's petition for a writ of certiorari. (ER 148).

Despite entry of the final, non-appealable order in October 2018, affirming BoNYM's right to pursue its claim, Appellant never disbursed the funds in the reserve account to BoNYM. (ER 106-10). Over the next few months, BoNYM made numerous payment demands and warned Appellant that it would move to convert or dismiss the case if Appellant failed to disburse the funds as the Plan required. (ER 154-55).

On March 11, 2019, BoNYM moved to convert or dismiss under section 1112(b)(4)(N), asserting that Appellant's non-payment constituted a material default under the Plan. (ER 99-103 (motion), 106-10 (declarations)). Appellant opposed the motion. (ER 115-22 (opposition)). Appellant admitted that she had not turned over the funds in the reserve account to BoNYM, but argued that her failure to do so was justified. (*Id.*). Appellant claimed that BoNYM had issued Ms. Baroni and her husband two 1099-C Forms writing off the unsecured portion of the claim in an amount that actually exceeded the unsecured portion, reasoning that BoNYM therefore must have written off some portion of the secured claim, which would in turn mean that BoNYM was no longer owed the full amount in the reserve account. (*Id.*). BoNYM replied explaining that Appellant was improperly double counting the cancelled debt, as Ms. Baroni and her husband each received one form for the total amount, which included the unsecured portion of the claim plus the additional accrued interest. (ER 206-07).

### B. The Bankruptcy Court's Conversion Order

On April 9, 2019, the Bankruptcy Court held a hearing on BoNYM's motion to convert. (ER 430-61 (hearing transcript)). Appellant conceded that she had not paid BoNYM in accordance with the Plan and that there was no order or law excusing her from paying. (ER 439-40). However, Appellant argued that she had not defaulted under the Plan because she had made all payments to the reserve account as required, the reserve account was current, and that she could issue a check to BoNYM with the full amount in the reserve account that same day. (ER 438, 445). Appellant asserted that the only reason she did not disburse the funds in the reserve account to BoNYM was because of the issue with the 1099-C Forms, though she conceded that she took no legal action to resolve this issue and absolve her of her duty to pay. (ER 439, 442).

The Bankruptcy Court held that cause existed to convert or dismiss the case under section 1112(b)(4)(N), a material default under the Plan. (ER 451-52). The Bankruptcy Court determined that Appellant's duty to disburse the reserve account funds to BoNYM was triggered when Appellant's objections to BoNYM's claim were conclusively adjudicated, that is, when the Supreme Court denied her petition for certiorari in October 2018. (ER 449-50). It held that Appellant's failure to pay the funds after that date was a material breach of the Plan. (*Id.*).

The Bankruptcy Court found that Appellant's argument with respect to the 1099-C Forms did not provide a reasonable justification for her default. (ER 450-51). The court reasoned that the 1099-C was issued for roughly the amount of the unsecured claim plus interest, and BoNYM's explanation about providing notice of the total amount to both borrowers made sense. (*Id.*). But even if Appellant's 1099-C argument had merit, the court explained, Appellant's failure would still be unreasonable because she made no effort to resolve the issue until she was forced to do so by BoNYM's motion to convert or dismiss. (ER 453). The court further found that Appellant's failure to pay was in bad faith, as the same exact issue arose

4

the previous year when Appellant failed to disburse the reserve account funds to Wells Fargo until Wells Fargo moved to convert or dismiss. (ER 449, 452). Appellant had claimed that she failed to pay Wells Fargo because she did not know where to send the payment; though the Bankruptcy Court found that this explanation was "nonsense," the Bankruptcy Court nonetheless gave Appellant an opportunity to cure the default as to Wells Fargo. (ER 449). This time, however, the Bankruptcy Court was unwilling to allow Appellant "to roll the dice" again and avoid her payment obligations until faced with the threat of conversion or dismissal. (ER 449).

The Bankruptcy Court also found that Appellant failed to prove that she could cure her default within a reasonable period of time, as she presented no sworn declaration to substantiate her counsel's claims that she could disburse the funds to BoNYM immediately. (ER 453-54).

Moreover, the Bankruptcy Court explained that its findings with respect to reasonable justification and curability were superfluous, as these two factors only become relevant after a court first finds unusual circumstances establishing that converting or dismissing the case is not in the best interests of the creditors and the estate. (ER 454-53). The Bankruptcy Court found no such unusual circumstances. (ER 454-53).

Finally, in deciding between conversion and dismissal, the Bankruptcy Court found that dismissal would not serve the best interests of the creditors, who would benefit from receiving closure in the case and would still be able to maximize their recovery upon conversion. (ER 454-57). The court also relied upon the fact that no creditor had objected to conversion and that, given the simplicity of the case, there was no reason to believe that the cost of appointing a trustee would significantly deplete the estate's assets. (ER 456-59). On April 29, 2019, the Bankruptcy Court entered an order granting the motion and ordering conversion. (ER 80-81, 459-60).

On May 13, 2019, Appellant moved for reconsideration of the Conversion Order, making a host of new arguments, including that BoNYM's conversion motion was not served on every creditor, and that her failure to pay BoNYM was not a material breach of the entire Plan. (ER 222-26). A hearing on the motion was held on June 11, 2019. (ER 462-513 (hearing transcript)). The Bankruptcy Court noted that Appellant's arguments could have been raised previously because they were not based on the existence of new facts or an intervening change in law. (ER 466-49). The motion for reconsideration was denied on July 31, 2019. (ER 9-10).

Appellant filed the instant appeal of the Conversion Order.

## II. STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from final judgments, orders and decrees of the bankruptcy court. 28 U.S.C. § 158(a). "When reviewing a decision of a bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *In re Guadarrama*, 284 B.R. 463, 468 (C.D. Cal. 2002) (citing *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992)). An order converting a case from chapter 11 to chapter 7 is reviewed for abuse of discretion. *In re Greenfield Drive Storage Park*, 207 B.R. 913, 916 (B.A.P. 9th Cir. 1997).

The Ninth Circuit uses a two-part test to determine whether a bankruptcy court abused its discretion: A reviewing court must first "consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested," and second, "review the bankruptcy court's fact findings for clear error." *In re Sullivan*, 522 B.R. 604, 611 (B.A.P. 9th Cir. 2014). A court "must affirm the bankruptcy court's fact findings unless [the court] conclude[s] that they are illogical, implausible, or without support in the record." *Id.* at 612 (citation omitted).

## III. DISCUSSION

Appellant claims that the Bankruptcy Court abused its discretion when it converted her case from chapter 11 to chapter 7. (OB at 27-38).

### A. <u>Cause</u>

Conversion is governed by 11 U.S.C. § 1112(b)(1) (the "Cause Provision"), which provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Relevant here, grounds for "cause" include a "material default by the debtor with respect to a confirmed plan." § 1112(b)(4)(N).

Appellant claims that it was clearly erroneous for the Bankruptcy Court to find that Appellant failed to disburse the funds in the reserve account to BoNYM because this finding was without adequate evidentiary support. (OB at 28). This argument is meritless. Not only did BoNYM provide two declarations establishing that Appellant never paid BoNYM in accordance with the Plan, (ER 106-10), but also Appellant repeatedly conceded this fact during the hearing. (*See, e.g.*, ER 439).

Appellant also argues that there was no cause to convert the case because her default as to BoNYM, a single creditor, did not constitute a material default of the entire Plan. (OB at 31-33). BoNYM responds that Appellant waived this argument by failing to raise it below until her motion for reconsideration. (AB at 13).

The Court agrees with BoNYM that, as a general matter, a party cannot avoid the waiver rule on appeal by raising an issue for the first time in a motion for reconsideration that could have been made earlier in reasonable diligence. *See Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841 (9th Cir. 1995) ("That Plaintiffs raised the issue in a post-judgment motion does not save this issue for appeal for the Plaintiffs") (citing *Seamon v. Vaughan*, 921 F.2d 1217, 1220 (11th Cir. 1991) (declining to entertain an argument on appeal that the party raised for the

first time in its motion to amend the judgment under Rule 59(e)). However, the Court disagrees that Appellant waived this issue.

The standard for whether an appellate court will consider an issue "is that the argument must be raised sufficiently for the trial court to rule on it." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016) (internal citations and alterations omitted). "Accordingly, when a party takes a position and the [trial] court rules on it, there is no waiver." *Id.* (citation omitted).

At the hearing on BoNYM's consolidation motion, Appellant asserted that she had been performing her obligations under the Plan by making all payments to the reserve account on BoNYM's claim and to other creditors like CIT Bank and Wells Fargo. (*See* ER 438, 445, 455). The thrust of Appellant's argument was that despite her failure to transfer the reserve account funds to BoNYM, she had materially complied with her obligations under the Plan by making regular payments as required. The Bankruptcy Court rejected this argument and determined that Appellant's failure to transfer the funds was itself a material breach of the Plan. Therefore, the Court is satisfied that Appellant did not waive the issue of whether the default was material: Appellant took a position, and the Bankruptcy Court ruled on it. *See Yamada*, 825 F.3d at 543.

With respect to the merits, Appellant's argument fails. Appellant cites no case holding that a debtor's failure to make a hefty payment to a creditor for six months does not constitute a material default of a chapter 11 plan. (*See* OB at 32). *In re Smith*, 201 B.R. 267, 271 (D. Nev. 1996), *aff'd*, 141 F.3d 1179 (9th Cir. 1998), does not support Appellant's position. (*See id.*). Although the bankruptcy court in *In re Smith* gave the debtor several opportunities to cure his default before ordering conversion, no rule required the court to do so before finding that the default was material. *See generally id.*

Further, Appellant *was* given an opportunity to cure her inexcusable default with respect to creditor Wells Fargo. (ER 449). The Bankruptcy Court found that

8

Appellant had intentionally exploited this opportunity by again subverting her obligations under the Plan and waiting to take any step toward compliance until an unpaid creditor moved to convert or dismiss. (*See* ER 444 ("The Court: I believe that this is out and out subterfuge of her own obligations under the plan"); ER 445 ("The Court: So, again, like the last time, you wanted to roll the dice and see what happened"); ER 453 ("The Court: Not a single finger was lifted to try to absolve Mrs. Baroni from her obligation to make those payments under the plan. It only comes push comes to shove in response to a motion to convert or dismiss.")). Under these circumstances, it was patently reasonable for the Bankruptcy Court to deny Appellant additional lenience. *See In re Sullivan*, 522 B.R. at 612 (explaining that an appellate court must affirm a bankruptcy court's factual findings unless they are "illogical, implausible, or without support in the record").

*In re Mission Heights Inv'rs Ltd. P'ship*, 202 B.R. 131 (Bankr. D. Ariz. 1996) is similarly unhelpful to Appellant's argument. (*See* OB at 32). Appellant's failure to pay BoNYM was not a "technical" violation of the Plan and "no longer a real issue" like in *In re Mission Heights*, where "[a]ll creditors ha[d] been paid in accordance with the plan's provisions." 202 B.R. at 139 (holding that a violation of the plan did not constitute a material default because performing the defaulted provision "would no longer serve any purpose"). Rather, the Bankruptcy Court found that Appellant twice concocted specious reasons to hold overdue funds in reserve accounts until she faced conversion or dismissal. This finding supported the Bankruptcy Court's conclusion that Appellant had not complied (and was unwilling to comply voluntarily) with the material provisions of the Plan directing her to make payments to creditors. *See In re Sullivan*, 522 B.R. at 612.

Accordingly, the Conversion Order with respect to Appellant's material default is **AFFIRMED**.

### B. Safe Harbor

Even where cause exists, a bankruptcy court may not convert or dismiss if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that –

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A) –
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (the "Safe Harbor Provision").

Appellant contends that it was clearly erroneous for the Bankruptcy Court to find no unusual circumstances establishing that converting or dismissing was not in the best interest of the creditors and the estate. (OB 28, 36). This argument is unavailing, as Appellant neglects to identify specifically what those unusual circumstances were. (*See generally* OB). At the hearing, Appellant claimed that it was an unusual circumstance for Appellant to face conversion solely because she did not write a check on time. (Hearing Tr. 11:12-21). However, Appellant also conceded that she knew of no cases finding an analogous situation to constitute an unusual circumstance within the meaning of the Bankruptcy Code.

BoNYM asserts that, since a finding of unusual circumstances is a prerequisite to addressing reasonable justification and curability, this failure alone is sufficient to affirm the Bankruptcy Court's ruling as to the Safe Harbor Provision.

(AB at 15) (citing 11 U.S.C. § 1112(b)(2)). Appellant appears to disagree with BoNYM's reading of the statute. (RB at 7). The Court need not resolve the issue because Appellant's arguments as to reasonable justification and curability fail.

Appellant claims that it was clearly erroneous for the Bankruptcy Court to find that there was no reasonable justification for the default, and that the default was not likely to be cured within a reasonable time because Appellant could have cured the default immediately. (OB at 28). The Court disagrees.

The Bankruptcy Court held that the 1099 issue did not provide a reasonable justification for Appellant's default because, even if the substance of the argument had any merit, Appellant inexcusably failed to lift "a single finger" to seek legal resolution of the issue to amend her obligations under the Plan for six months after the payment to BoNYM was due. (ER 453).

This finding was not clearly erroneous merely because Appellant was putatively able to cure the default immediately:

*First*, it is insufficient for a debtor to prove that the grounds for cause will be cured immediately; she must additionally provide a reasonable justification for the cause. *See* 11 U.S.C. § 1112(b)(2)(B)(i), (ii). Second, as the Bankruptcy Court correctly noted, Appellant produced no evidence proving that she ***could*** and ***would*** cure the default immediately. (ER 453-54).

*Second,* even assuming that Appellant could have paid BoNYM immediately, if anything, that fact would make her failure to do so for six months all the more unjustifiable, demonstrating that she could have made the payment, but intentionally chose not to.

*Third*, it was reasonable for the Bankruptcy Court to conclude that Appellant's default was unlikely to be cured, given Appellant's failure to produce proof of immediate curability and her pattern of intentionally dodging her payment obligations, as noted above. (*See* ER 444). These findings are not "illogical, implausible, or without support in the record." *See In re Sullivan*, 522 B.R. at 612.

11

Accordingly, the Conversion Order with respect to the Safe Harbor Provision is **AFFIRMED**.

### C. Conversion or Dismissal

If a bankruptcy court determines that there is cause to convert or dismiss and that the Safe Harbor Provision does not apply, it then "ha[s] an independent obligation under § 1112 to consider what [will] happen to all creditors on dismissal [or conversion] and, in light of its analysis, whether dismissal or conversion would be in the best interest of all creditors, not just the largest and most vocal creditor." *In re Sullivan*, 522 B.R. at 613 (citation omitted). The decision to either convert or dismiss the case "is a matter for sound judicial discretion, and the standard implies a balancing test to be applied through case-by-case analysis." *In re Moore*, CV 19-1016-DOC, 2020 WL 2770432, at *4 (C.D. Cal. Mar. 2, 2020) (quoting *In re Staff Inv. Co.*, 146 B.R. 256, 260 (E.D. Cal. 1992)) (internal quotation marks omitted).

The Bankruptcy Court found that it was in the best interest of the creditors to convert the case to chapter 7 and appoint a trustee to administer the assets, reasoning that conversion would lead to a swifter, less costly, and final resolution of the case. (ER 444, 456-59). Appellant claims that this finding was clearly erroneous because it would have been significantly quicker, easier, and less costly for the Bankruptcy Court to permit Appellant to transfer the funds to BoNYM immediately and proceed under the Plan rather than to convert the case. (OB at 35). Specifically, Appellant argues that conversion required diverting funds from creditors to pay for costs incurred in retaining a chapter 7 trustee and was therefore necessarily more expensive and less beneficial to creditors. (*Id.*).

The problem with Appellant's argument is that the Bankruptcy Court had already justifiably concluded that Appellant was unwilling to fulfill her obligations under the Plan voluntarily. Foreseeing that Appellant's continued obstruction of the Plan would cause creditors to face additional unnecessary delays and costs, the Bankruptcy Court reasonably concluded that conversion was the cheaper, more

expedient option. Moreover, the Bankruptcy Court considered and rejected the idea that appointing a chapter 7 trustee would significantly deplete the estate's assets, reasoning that most of the work had already been done and the case was not very complicated or likely to be time consuming. (ER 458-59). On this record, the Court cannot conclude that it was illogical, implausible, or unfounded for the Bankruptcy Court to find that conversion was in the best interest of the creditors.

Accordingly, the Conversion Order with respect to the creditors' best interests is **AFFIRMED**.

### D. Other Claims

Appellant asserts that BoNYM's conversion motion should not have been heard because it was not served on every creditor, as required by Local Bankruptcy Rule 9013-1(d)(1). (OB at 29-30). Because Appellant did not raise this issue in form or in substance before the Bankruptcy Court until her motion for reconsideration, the Court declines to consider it here. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("an appellate court will not consider issues not properly raised before the [trial] court"); *Beech Aircraft Corp*, 51 F.3d at 841.

Even if this Court were to consider the merits of this argument, it fails to see how Appellant would have standing to invoke the rights of third parties, or what remedy, if any, would theoretically be available to her for the violation of third parties' procedural rights.

Also unfounded is Appellant's claim that the Bankruptcy Court improperly ordered conversion to sanction Appellant for making the argument that the 1099s reasonably justified her delay in payment. (*See* OB 37-39). As explained in detail above, the Bankruptcy Court ordered conversion because Appellant's ***failure to pay*** BoNYM for six months without reasonable justification constituted a material default under the Plan, not because Appellant's counsel made an ultimately unavailing ***argument*** offered in an attempt to justify Appellant's default. (*See* ER

13

453). Nothing in the record supports Appellant's characterization of the Conversion Order as a sanction for making meritless legal arguments.

At the hearing, Appellant asserted that the Bankruptcy Court's Conversion Order was unnecessarily punitive and was an abuse of discretion because it was disproportionate to her "crime" in failing to make a payment on time. (Hearing Tr. 7:14-8:3). The fact that conversion caused Appellant to suffer undesirable and unforeseen consequences like the loss of her home and other properties, while unfortunate, does not transform the Bankruptcy Court's well-founded exercise of discretion into an improper or abusive sanction.

## IV. CONCLUSION

For the reasons stated above, the Bankruptcy Court's Conversion Order is **AFFIRMED**.

IT IS SO ORDERED.

DATED: January 25, 2021

MICHAEL W. FITZGERALD
United States District Judge

CC: Bankruptcy Court